UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOBBY RAND GOLDEN, JR. | CIVIL ACTION |
| VERSUS | NO. 26-39 |
| SERGEANT FORD, ET AL. | SECTION: "A" (3) |

**REPORT AND RECOMMENDATION**

Plaintiff, Bobby Rand Golden, Jr., a pretrial detainee, filed this *pro se* and *in forma pauperis* civil action under 42 U.S.C. § 1983.[1]

In his original complaint, Golden named Sergeant Ford as the sole defendant.[2] He alleged that his claims related to incidents on February 21, 2018 and March 15, 2025.[3] With regard to the first incident, he alleged that, on February 18, 2018, "Jefferson Parish law enforcement" illegally searched him, while using excessive force, illegally seized his money, arrested him on felony drug and paraphernalia charges, and illegally impounded his vehicle.[4] According to documents Golden attached to the complaint, on February 21, 2018, law enforcement officers executed a search warrant at Golden's apartment.[5] Inside, they found a digital scale, a box of bags, and paperwork addressed to Golden at the apartment address.[6] Upon exiting,

[1] R. Doc. 1. Golden was **not** incarcerated when he filed this case in the District of Columbia in July 2025. His case was transferred to this Court on January 8, 2026. R. Doc. 7. In February 2026, Golden was re-arrested and remains incarcerated to date. R. Doc. 15.
[2] *Id.* at 2.
[3] *Id.* at 5.
[4] R. Doc. 1-1 at 3–9.
[5] R. Doc. 1-2 at 10–14, 25.
[6] *Id.* at 25.

a female informed a detective that Golden was watching the detectives from a white SUV parked across from the apartment complex.[7]

Detectives approached Golden, verified his identity, handcuffed and detained him, and advised him of his *Miranda* rights.[8] After Golden agreed to speak with the detectives, he was escorted to his apartment.[9] On the way to the apartment, Detective Carollo noticed Golden stop and adjust an object in the rear of his pants.[10] Golden confirmed that the apartment and paraphernalia were his, but claimed that no narcotics were in the apartment.[11] Carollo placed Golden under arrest for possession of drug paraphernalia.[12] Carollo noticed that Golden began to sweat profusely, stutter when responding to questions, and he occasionally adjusted the rear of his pants.[13] Based on Golden's nervousness and his actions, detectives conducted a search of his person.[14] Carollo felt a hard object in the rear of Golden's pants.[15] Detectives pulled down Golden's pants far enough to view the corner of a clear plastic bag in between his buttocks.[16] Golden struggled to prevent detectives from removing the object and fell to the ground.[17] Detectives struck him multiple times on his buttocks and upper thigh until he stopped clenching his buttocks and Carollo was able to remove a clear

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 26.
[17] *Id.*

plastic bag containing nine smaller bags of off-white rock objects.[18] A chemical field test was positive for cocaine and a total of 12 crack cocaine rocks, weighing a total of 4.5 grams, were located.[19] Golden was placed under arrest for possession with the intent to distribute cocaine in addition to the drug paraphernalia charge.[20] Golden denied possessing, doing, or selling drugs and refused to provide further information.[21]

Carollo asked Golden about his vehicle and Golden claimed that there was nothing inside.[22] Golden signed a Consent to Search form authorizing detectives to search his vehicle.[23] Carollo located approximately $835 in $5, $10, and $20 denominations, which Carollo believed was consistent with distribution of narcotics.[24] As the vehicle was not insured, Carollo requested to it be towed for failure to provide proof of insurance.[25] The vehicle was later released on March 27, 2018.[26]

Golden claimed that he earned the money located in the vehicle doing construction work.[27] Carollo, however, noted that Golden had limited mobility and utilized crutches to move around, and he learned that Golden had suffered a compound fracture to his ankle months earlier.[28] Further, Golden was previously

---

[18] *Id.*
[19] *Id.* at 26, 28.
[20] *Id.* at 26.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 15, 26
[24] *Id.* at 26, 28.
[25] *Id.* at 26.
[26] *Id.* at 6.
[27] *Id.* at 18, 26, 27.
[28] *Id.*

convicted in 2011 for distribution of crack cocaine and was on parole at the time of his arrest.[29] The money was seized pursuant to a warrant.[30]

Golden was charged by bill of information with possession with intent to distribute cocaine weighing less than 28 grams.[31] Golden admitted that the case, along with other criminal charges against him, are still pending.[32]

With respect to the incident on March 15, 2025, Golden claimed that he was attacked and injured by three inmates while housed in Jefferson Parish Correctional Center.[33] He faults "security" for allowing inmates from another dorm to enter his dorm through a security door.[34] He claims that deputies broke up the fight and escorted him to medical.[35] Golden asserts that a nurse treated his injuries, but she would not allow him to see a physician.[36] He claims that Sergeant Ford questioned him about the incident.[37] He was brought back to the medical holding cell on March 17, 2025, and claims that "staff and nurses" used foul language.[38] Because he was suspicious of the food, he went on a hunger strike and was refused medical attention.[39] On April 15, 2025, he was transferred to the Eastern Louisiana Mental

[29] *Id.* at 27.
[30] *Id.* at 18–20.
[31] R. Doc 1-1 at 31.
[32] R. Doc. 1-1 at 20.
[33] R. Doc. 1 at 5; R. Doc. 1-1 at 14
[34] *Id.* at 15–16
[35] *Id.* at 15.
[36] *Id.* at 15–16
[37] *Id.* at 16.
[38] *Id.*
[39] *Id.* at 16–17.

Health System in Jackson, Louisiana, for mental health treatment.[40] He was released on bond on June 18, 2025.[41]

The Court ordered Golden to provide further information to assist it in screening the case.[42] According to Golden's response to that order, the law enforcement officers involved in his arrest on February 21, 2018 are Detective Charles Carollo, Detective Carl Marshall, Detective Patrich Evans, Sergeant Josh Berumdez, Derek Green, Keith Branchcom, Blake Holliefield, and Sergeant Julio Alvarado.[43] With regard to the March 15, 2025 incident, Golden alleges that he was attacked by multiple inmates and that "[w]hen Sergeant Ford came to question me about this incident she showed all the carelessness she can."[44] Golden states that he was taken to medical and that the nurse treated a wound under his left eye and provided him with Tylenol.[45] He claims that his request to be seen by a doctor was denied.[46]

Golden states he is still pending trial on the criminal charges stemming from his February 2018 arrest.[47] He requests "the government agents to face judgment for their crimes and my criminal records in Jefferson Parish Louisiana be expunged."[48]

Because it was unclear from Golden's filings whether he intended to name

---

[40] *Id.* at 17.
[41] *Id.* at 19.
[42] R. Doc. 12.
[43] R. Doc. 13 at 5, 8, 63.
[44] *Id.* at 62.
[45] *Id.* at 26.
[46] *Id.*
[47] *Id.* at 67.
[48] *Id.* at 67–68.

persons other than Sergeant Ford as defendants, and, as Golden is proceeding *pro se*, the Court afforded him an opportunity to amend his complaint.[49] The Court warned Golden to include all the defendants and claims he intended to pursue as the amended and superseding complaint would entirely replace his original complaint.[50]

In his amended and superseding complaint, Golden named as defendants Sergeant Ford, Detective Charles Carollo, Detective Carl Marshall, Detective Patrick Evans, Sergeant Josh Bermudez, Derek Green, Keith Branchcomb, Blake Holliefield, Sergeant Julio Alvarado, "Jefferson Parish Correctional Center Medical Personnel," and "Jefferson Parish Correctional Center Security Administration."[51] Golden claims that, on February 21, 2018, during the search of his person incident to his arrest, Detective Carollo illegally touched him.[52] He further claims that he was illegally strip searched and assaulted, and that excessive force was used during the search, resulting in injuries to him.[53]

With regard to the March 15, 2025 incident, he claims that unidentified inmates attacked him.[54] He claims that "security" was "careless."[55] He claims that, as a result of the incident, he suffered a gash to his eye and swelling of the face and back of head.[56] Golden further claims that neither Sergeant Ford nor an unidentified

---

[49] R. Doc. 16.
[50] *Id.* at. 3.
[51] R. Doc. 17 at 2.
[52] *Id.* at 2–3.
[53] *Id.* at 3–4.
[54] *Id.* at 2.
[55] *Id.* at 5.
[56] *Id.* at 4.

nurse prepared an incident report.[57]

Golden claims that he was refused medical attention from March 15, 2025 to April 15, 2025.[58] He further claims that he was rearrested on February 11, 2026 and is currently being illegally held pursuant to La. Code Crim. P. art. 648(B)(3).[59]

Golden seeks to have defendants "face judgment for their crimes," as well as his release, his criminal record be expunged, and monetary relief.[60]

The Court ordered production of Golden's medical records at Jefferson Parish Correctional Center.[61] Those records have been produced.[62] Golden is currently undergoing mental health treatment at the Northlake Behavioral Health System.[63]

## I. Mandatory Screening Provisions

"There is no absolute right to be allowed to proceed in forma pauperis in civil matters; rather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969). Title 28 U.S.C. 1915(e)(2) thus directs, in relevant part, that courts "shall dismiss [an *in forma pauperis* plaintiff's] case at any time" if the plaintiff's complaint fails to state a claim upon which relief may be granted or is determined to be frivolous.

A complaint is frivolous "if it lacks an arguable basis in law or fact." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (citation omitted). This standard, "when

---

[57] *Id.* at 2.
[58] *Id.* at 3, 5.
[59] *Id.* at 5.
[60] *Id.* at 4–6.
[61] R. Docs. 18, 22.
[62] R. Docs. 25-1 and 25-2.
[63] R. Doc. 26.

applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A "complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II. Analysis

Golden filed this action under 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler*

*v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006).

### A. Unlawful Arrest & Excessive Force During Search/Arrest & Unlawful Seizure of Vehicle

Golden's claims of unlawful arrest and excessive force related to his arrest on February 18, 2018, as well as his claim relating to the seizure of his vehicle, are futile because they are prescribed.

"[T]he statute of limitations for a Section 1983 action is a state's general or residual personal injury statute of limitations." *Brown v. Pouncy*, 93 F.4th 331, 334 (5th Cir. 2024) (citation omitted). Here, that is Louisiana's one-year statute of limitations/prescriptive period for tort claims.[64] La. Civ. Code art. 3492 (repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024). Golden was searched and arrested and his vehicle seized on February 18, 2018. His claims accrued at the moment of his arrest. *Davis v. Warren*, 173 F.4th 566, 572 (5th Cir. 2026) (citations omitted); *Wallace v. Kato*, 549 U.S. 384, 397 (2007) (holding that the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process.").

The statute of limitations required that Golden file suit with respect to these claims within one year. As Golden's federal complaint was filed no earlier than July

[64] Currently, Louisiana's prescriptive period for torts is two years. La. Civ. Code art. 3493.1. But Article 3493.1 has "prospective application only," and its two-year prescriptive period "shall apply to delictual actions arising after the [July 1, 2024] effective date of [Act 423]." TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Because the alleged incidents underlying these claims occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply. *See Allied World Nat'l Assurance Co. v. Nisus Corp.*, 134 F.4th 821, 826 n.3 (5th Cir. 2025) (applying the former Article 3492's one-year prescriptive period to tort claim arising from facts occurring before July 1, 2024).

30, 2025, the claims relating to his search and arrest and seizure of his vehicle on February 18, 2018 were clearly prescribed at the time of filing unless the one-year statute of limitations was tolled.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. *Lopez-Vences v. Payne*, 74 F. App'x 398, 398 (5th Cir. 2003); *Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002). The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of *contra non valentem*. *Crane v. Childers*, 655 F. App'x 203, 204 (5th Cir. 2016) (citing *Corsey v. State*, 375 So. 2d 1319, 1321 (La. 1979)). *Contra non valentem* excepts a plaintiff from an applicable prescriptive period "where the cause of action is not known or reasonably knowable by the plaintiff." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009) (quoting *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993)). According to the Fifth Circuit:

> The doctrine tolls prescription only in these four "exceptional circumstances":
>
> > (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*In re Taxotere (Docetaxel) Prods. Liab. Lit.*, 995 F.3d 384, 390 (5th Cir. 2021) (citing *Morgan v. Entergy New Orleans, Inc.*, 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).

Golden claims he believed that his former defense attorney was going to file a civil suit on his behalf.[65] The record reflects that on December 20, 2021, after Golden rejected a plea offer of one year probation with no jail time, Golden requested that his criminal defense counsel Kevin Boshea withdraw from his criminal case.[66] In a February 8, 2022 letter to the Louisiana Attorney Disciplinary Board, attorney Kevin Boshea explained that, in December 2021, Golden demanded that he file a civil suit against the police officers.[67] According to Boshea, he repeatedly told Golden that he is not a civil attorney, has never filed a civil case, and was contracted only for Golden's criminal charge of possession with intent to distribute cocaine.[68] Thus, the record demonstrates that, even if Golden believed that his defense attorney was going to initiate a civil suit, certainly, by the end of December 2021, he was aware that Boshea had not filed and did not plan to file such a lawsuit. Thereafter, instead of filing a lawsuit, Golden sought to have the matter reviewed by the Civil Rights Division of the United States Department of Justice.[69] He provides no explanation of why such a review was necessary in order for his to file his complaint.

The record does not show that the doctrine of *contra non valentem*, nor any other doctrine that may toll the statute of limitations/prescriptive period, applies to

---

[65] R. Doc. 1 at 8; R. Doc. 1-1 at 3, 9; R. Doc. 13 at 14.
[66] R. Doc. 13 at 9.
[67] *Id.* at 7, 9.
[68] *Id.* at 9.
[69] R. Doc. 1-2 at 1–2.

except him from the time-bar. *Id.* (explaining the doctrine of *contra non valentem*). As such, the one-year prescriptive period for Golden's claims related to the search and his arrest and the seizure of his vehicle on February 18, 2018 ran well before he filed his complaint on July 30, 2025. Prescribed claims are properly dismissed as frivolous. *See, e.g.*, *Brown v. Pool*, 79 F. App'x 15, 17 (5th Cir. 2003); *Gonzales v. Wyatt*, 157 F.3d 1016, 1019–20 (5th Cir. 1998).

Accordingly, Golden's § 1983 claims of unlawful arrest and excessive force related to his arrest on February 18, 2018, as well as his claim relating to the seizure of his vehicle, against Detective Charles Carollo, Detective Carl Marshall, Detective Patrick Evans, Sergeant Josh Bermudez, Derek Green, Keith Branchcomb, Blake Holliefield, and Sergeant Julio Alvarado should be dismissed.

**B. False Imprisonment**

If Golden had been convicted already of state criminal charges, *Heck v. Humphrey*, 512 U.S. 477 (1994), would bar consideration of his false imprisonment claim as it relates to Detective Carollo, Detective Marshall, Detective Evans, Sergeant Bermudez, Green, Branchcomb, Holliefield, and Sergeant Alvarado. In *Heck*, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983

> suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486–87 (emphasis in original) (footnote omitted). Thus, *Heck* bars a false imprisonment claim brought by a convicted prisoner until such time as he obtains a favorable disposition of the underlying criminal charges for which he was imprisonment. *Cormier v. Lafayette City-Parish Consolidated Government*, 493 F. App'x 578, 583–84 (5th Cir. 2012).

Golden confirmed that he is currently awaiting trial on his state criminal charges.[70] In *Wallace*, 549 U.S. at 393–94, the Supreme Court concluded that a stay is appropriate in this circumstance. In *Wallace*, the Court explained that, if a pretrial detainee files civil rights claims related to the validity of a pending criminal proceeding, the best practice is for the district court to stay the civil rights action until the pending criminal case is resolved to determine the impact of the *Heck* limitations. *Id.* at 393–94; *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to an ongoing state criminal proceeding to be the best practice). The Court explained:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the civil suit would impugn

[70] R. Doc. 1-1 at 20; R. Doc. 13 at 31.

> that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Wallace*, 549 U.S. at 393–94 (citations omitted).

Golden's false imprisonment claims necessarily relate to the propriety of his ongoing state criminal proceeding. As a result, his false imprisonment claims against Detective Carollo, Detective Marshall, Detective Evans, Sergeant Bermudez, Green, Branchcomb, Holliefield, and Sergeant Alvarado should be stayed until such time as Golden's state criminal proceedings are concluded.

**C. Jefferson Parish Correctional Center "Medical Personnel" & "Security Administration"**

In his amended and superseding complaint, Golden names the Jefferson Parish Correctional Center "Medical Personnel" and "Security Administration."[71] Neither is a proper defendant.

In Louisiana, jail facilities are not "legally empowered to do" anything independent of either parish officials or the parish sheriff. *Cf. Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994). Consequently, "a prison or jail or its administrative departments" do not have the capacity to be sued. *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (citations omitted). Further, with respect to the § 1983 claims, a jail is not a "person" subject to suit under the statute. *See Fields v. Orleans Par. Sheriff*, No. 13-169, 2013 WL 6388571, at *1 (E.D. La. Dec. 6, 2013) (citations omitted).

Additionally, broad groups of persons such as "medical personnel" nor "security

[71] R. Doc. 17 at 2–3.

administration" are not properly named as defendants. *See Smith v. Lafourche Parish*, No. 21-1714, 2021 WL 4975698, at *2 (E.D. La. Sept. 30, 2021) ("discrete departments of prison facilities are simply not considered to be 'persons' under § 1983."), *adopted*, 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *Jiles v. Orleans Parish Prison Med. Clinic*, No. 09-8426, 2010 WL 3584059, at *2 (E.D. La. Sep. 7, 2010) ("[a] jail's medical department simply is not a juridical entity capable of being sued."); *Brewin v. St. Tammany Parish Corr. Ctr.*, No. 08-0639 2009 WL 1491179, at *2 (W.D. La. May 26, 2009) (dismissing a § 1983 action against the prison medical department because the department is not an independent entity capable of being a party to a lawsuit). Instead, an action must be filed against an actual identified person, not a department or a general staff group at the jail. *See, e.g.*, *Hill v. Strain*, No. 08-4768, 2010 WL 111062, at *3 (E.D. La. Jan. 11, 2010) ("Plaintiff may not pursue claims against the unidentified medical personnel and/or sheriff deputies .... A § 1983 action must be filed against an actual identified person."); *Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n.8 (E.D. La. Feb. 2, 2006) (finding "Medical Staff" is not a juridical entity capable of being sued; rather, the specific medical personnel must be named); *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008).

Accordingly, Golden's § 1983 claims against the Jefferson Parish Correctional Center "Medical Personnel" and "Security Administration" should be dismissed.

`

**D. Sergeant Ford**

To the extent that Golden faults Sergeant Ford for her investigation of the March 15, 2025 incident where Golden was attacked by other inmates,[72] he cannot succeed on his claim. It is well-established that a prisoner has no protected liberty interest in either the adequacy or the result of prison administrative grievance procedures. *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Eason v. Thaler*, 73 F.3d 1322, 1325–26 (5th Cir. 1996)). The Fifth Circuit has held that a prisoner does not have a constitutionally protected interest in having his grievances resolved to his satisfaction. *Hostetter v. Aransas County*, No. 23-40252, 2024 WL 125701, at *2 (5th Cir. Jan. 11, 2024) (citing *Geiger*, 404 F.3d at 374).

To the extent that Golden may be claiming that Sergeant Ford was a member of the security team and allowed the other inmates to enter his dormitory through a security door, that claim also fails. To state a § 1983 failure-to-protect claim, Golden must allege that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). To satisfy the deliberate indifference element, a plaintiff must allege that the defendants "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm

[72] R. Doc. 1 at 6–7; R. Doc. 1-1 at 16; R. Doc. 13 at 27, 62; R. Doc. 17 at 2.

existed." *Rogers v. Boatright*, 709 F.3d 403, 407–08 (5th Cir. 2013). Thus, Golden must allege that Sergeant Ford not only knew of and disregarded an excessive risk to his health or safety, but that she also drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The risk of assault cannot be just any risk but must be "excessive." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009). This is because "[p]rison officials are not ... expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Here, Golden does not allege that Sergeant Ford had any knowledge of a specific threat to Golden's health or safety and failed to take measures to protect him from it. Rather, Golden admitted that he did not know how the other inmates made it through the security door.[73] He specifically blamed the incident on the "carelessness of security."[74] Negligence, however, on the part of the prison officials does not rise to the level of a § 1983 claim for deliberate indifference; nor does an official's failure to alleviate a significant risk that she should have perceived, but did not. *See Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). As such, Golden does not present a viable failure to protect claim against Sergeant Ford. *Vela v. Garcia*, 728 F. App'x 285, 287 (5th Cir. 2018) (explaining that prisoner's failure "to allege [defendant] w[as] aware of facts from which the inference could be drawn that [prisoner] was exposed to a substantial risk of serious harm" was fatal to his failure-

[73] R. Doc. 1-1 at 15; R. Doc. 13 at 26
[74] R. Doc. 13 at 62; R. Doc. 17 at 5.

to-protect claim).

Accordingly, Golden's § 1983 claims against Sergeant Ford should be dismissed.

**E. Foul Language**

Golden complains that unidentified staff and nurses used foul language on March 17, 2025. The use of foul language, however, does not rise to the level of a constitutional violation *Rigsby v. Johnson*, No. 1:19CV63-GHD-RP, 2020 WL 5552144, at *3 (N.D. Miss. Sept. 16, 2020) (citing *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995)). Section 1983 does not recognize a claim for verbal insults. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1994) ("Mere allegations of verbal abuse do not present actionable claims under § 1983. '[A]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment ...." *David v. Assumption Parish Police Jury*, No. 02-765, 2003 WL 57039, at *3 (E.D. La. Jan. 6, 2003) (quoting *Jackson v. Liberty Cnty.*, 860 F. Supp. 360, 363 (E.D. Tex. 1994)).

As such, Golden's § 1983 claim relating to the staff's use of foul language should be dismissed.

**F. Food Tampering**

Golden claims that on two occasions he went on a hunger strike because he believed his food to be suspicious.[75] On the first occasion, he claims he did not eat for 72 hours.[76] On the second occasion, he claims his hunger strike lasted weeks.[77]

The Fifth Circuit has held that to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). Here, no defendants were named with respect to this claim, and no facts were developed setting forth any specific person's participation in this alleged wrong. Furthermore, while nothing in the record indicates Golden's reason for his first hunger strike,[78] the record reflects that, in April 2025, Golden advised, on multiple occasions, that he was on a second hunger strike, which lasted about a week, because he wanted to be released from the infirmary/special needs unit to the general population.[79]

In addition, Golden's claim of food tampering is wholly speculative and relies on nothing more than conclusory allegations. Golden's personal belief that the food was contaminated is not sufficient to support a claim. *Prescott v. Johnson*, No. 6:18cv577, 2022 WL 672694, at *10–11 (E.D. Tex. March 7, 2022) (dismissing plaintiff's barebones allegation that he believed his food was contaminated on various

[75] R. Doc. 1-1 at 13, 16; R. Doc. 13 at 24, 27.
[76] *Id.* at 13; R. Doc. 13 at 24, 27
[77] *Id.* at 16; R. Doc. 13 at 24, 27.
[78] R. Doc. 25-2 at 1731–1760.
[79] *Id.* at 1157,1164, 1166, 1194, 1196.

occasions), *aff'd*, No. 22-40255, 2023 WL 3723632 (5th Cir. May 30, 2023); *Lopez v. Wigly*, No. 9:07cv308, 2008 WL 5158569, at *6 (E.D. Tex. Dec. 9. 2008) (finding speculative assertion of food tampering was not sufficient to state a claim); *Cooper v. Bowles*, 3:91-CV-2622-D, 1997 WL 361879, at *2 (N.D. Tex. June 20, 1997) (dismissing claim alleging food tampering where plaintiff alleged maladies but failed to state the nature of the tampering or provide any factual support to demonstrate food tampering actually occurred). Mere suspicion and speculation are insufficient to support a plausible claim. *See, e.g.*, *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (holding that "[t]he plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation").

Accordingly, Golden's § 1983 claims alleging food tampering should be dismissed.

**G. Medical Indifference**

Golden claims that he was refused medical care on several occasions.[80] He claims he was refused medical treatment in January 2025 when he was on his first hunger strike.[81] He further claims that a nurse refused to allow him to be seen by a physician after the March 15, 2025 attack.[82] Finally, he claims that he was refused medical attention by unnamed medical staff from March 17, 2025 through April 15,

---

[80] R. Doc. 1-1 at 13, 15 R. Doc. 13 at 24–28, 65; R. Doc. 17 at 3.
[81] R. Doc. 1-1 at 13; R. Doc. 13 at 24.
[82] *Id.* at 15; R. Doc. 13 at 26.

2025.[83]

Inadequate medical care for purposes of a § 1983 claim occurs only when the conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs" that "constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For pretrial detainees, like Golden, "[t]he Fourteenth Amendment requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011). Under this deliberate indifference standard, a prison official is not liable unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

The Fifth Circuit has repeatedly noted that deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). The standard is so high that the Fifth Circuit recently noted, "In essence, when prison officials have attempted to care for a prisoner's medical needs, even if the care falls short, they have not exhibited subjective deliberate indifference." *Parker v. Hooper*, 171 F. 4th 736, 756 (5th Cir. 2026). "'Medical records of sick calls, examinations,

[83] Id. at 17; R. Doc. 13 at 28; R. Doc. 17 at 3, 5.

diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" *Gobert*, 463 F.3d at 347 n. 24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995)) (internal citations omitted). Further, "disagreements over medical judgment or isolated negligence may constitute medical malpractice but do not rise to the level of quasi-criminal deliberate indifference." *Parker*, 171 F.4th at 759 (citing *Gamble*, 429 U.S. at 106; *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015); *Domino*, 239 F.3d at 756)).

Initially, with respect to Golden's claim of deliberate indifference to his serious medical needs related to Golden's injury stemming from the March 15, 2025 incident, the medical records reflect that Golden sustained a laceration near his left outer eye after he was "jumped" by other inmates.[84] A medical assessment showed an approximate one centimeter laceration with "[s]cant bright red bleeding" and "[n]o swelling."[85] Golden denied loss of consciousness, dizziness, and vision change.[86] He did not report any other injuries, and none were seen upon examination.[87] A nurse cleaned Golden's wound, applied antiseptic, closed it with steri strips, and provided him with acetaminophen.[88] The nurse educated Golden about medication compliance and advised him to follow up with sick call if his condition did not improve.[89]

Golden does not claim that the nurse refused to treat him, ignored his

---

[84] R. Doc. 25-2 at 1395.
[85] *Id.* at 1396.
[86] *Id.*
[87] *Id.*
[88] *Id.* at 1395–96.
[89] *Id.* at 1396.

complaints, or engaged in wanton disregard for a serious medical need. Rather, Golden complains that the nurse denied his request to also be seen by a physician. The mere disagreement with the quality or extent of medical treatment, however, does not give rise to a § 1983 claim. *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019); *Gobert*, 463 F.3d at 346. The nurse's determination about the form of treatment or whether to provide treatment at all is "a classic example of a matter for medical judgment" that does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Even assuming that the nurse could have exercised a different treatment plan which included referring Golden to a physician or erred in her professional judgment, allegations of negligence or even malpractice are insufficient to establish deliberate indifference and do not state a constitutional violation. *Id.* at 106; *Gibson*, 920 F.3d at 219–20.

Next, the record rebuts Golden's claim of deliberate indifference to his serious medical needs when he was on his three-day hunger strike in January 2025. The record reflects that Golden was jailed for contempt of court on January 8, 2025.[90] He underwent medical and mental health intake screenings.[91] On January 10, 2025, after he refused meals and had not eaten in two days, he was admitted to the infirmary/special needs unit for mental health observation.[92] A mental health and MLP appointment was scheduled for the following day.[93] A hunger protocol was

[90] R. Doc. 25-2 at 1761.
[91] *Id.* at 1760–72.
[92] *Id.* at 1746, 1756–58, 1760
[93] *Id.* at 1760.

started, Golden was educated about diet and hydration, and he was encouraged to resume eating and drinking.[94] He was to be offered fluid and food every hour.[95] He was medically assessed daily.[96] On January 11, 2025, Golden began accepting his meals and ate 100 percent of his food thereafter.[97] On January 13, 2025, he was again evaluated, at which time he appeared well nourished, and he denied suicidal and homicidal ideations and hallucinations.[98] He was ordered to be discharged from mental health observation.[99]

Nor does the record support Golden's claim that he was refused medical attention from March 17, 2025 until April 15, 2025. Notably, the medical records reflect that, after the March 15, 2025 altercation with other inmates, Golden was not placed in the infirmary/special needs unit because he required ongoing medical treatment; rather, he was housed there for purposes of security/protective custody.[100] Nonetheless, the records demonstrate that, during that time, Golden was medically monitored and assessed multiple times a day, although he often refused to have his vital signs taken.[101]

On April 8, 2025, Golden was seen at the window shouting that he wanted to

[94] *Id.* at 1746–47.
[95] *Id.* at 1745.
[96] *Id.* at 1398–1741.
[97] *Id.* at 1731, 1740.
[98] *Id.* at 1720–21.
[99] *Id.* at 1721.
[100] *Id.* at 1126, 1183, 1383, 1390, 1393.
[101] *Id.* at 4, 7, 9, 13, 16–17, 587, 1126–1397.

leave the infirmary.[102] No acute distress was noted.[103] Later that day, he announced he was beginning a hunger strike as he was not allowed to return to the general population.[104] On April 9 and 11, 2025, Golden refused to be seen by the physician.[105] While he continued to state that he was on a hunger strike because he wanted to be placed in the general population, he was seen drinking water.[106] The Special Investigations Unit spoke to him about his behavior.[107] Golden underwent a physical assessment by Dr. Lombard on April 14, 2025, at which time he was medically stable, although his blood pressure was elevated, which was considered "situational."[108] He was discharged from the infirmary on April 15, 2025, and transferred to the East Louisiana Mental Health System.[109] Prior to his discharge, he was educated on medication/side effects, disease process/treatments, and life style changes, and he verbalized understanding.[110]

In sum, the records do not indicate that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (citation omitted). While perhaps Golden believes that his medical treatment was subpar, the fact that a prisoner's medical care "may

---

[102] *Id.* at 1197.
[103] *Id.*
[104] *Id.* at 1194.
[105] *Id.* at 1155.
[106] Id. at 1164, 1166.
[107] *Id.*
[108] *Id.* at 1140–42.
[109] *Id.* at 1126–28, 1138–39; *see id.* at 1119, 1123.
[110] *Id.*

not have been the best that money could buy" is insufficient to establish a federal violation. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."). Further, the U.S. Constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. *Hall v. Thomas*, 190 F.3d 693, 697–98 (5th Cir. 1999); *see also Kelly v. Gusman*, No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007). As stated above, claims of negligent care or mere disagreement with the speed, quality, or extent of medical treatment received is insufficient to bring a medical indifference claim. *Parker*, 171 F.4th at 759; *Gibson*, 920 F.3d at 220.

For these reasons, Golden's § 1983 claims of deliberate indifference to his serious medical needs should be dismissed.

**H. Request for Defendants to "Face Judgment for Their Crimes"**

To the extent that Golden requests that the individual defendants be criminally prosecuted, he has failed to state a viable claim. There is no constitutional right to have someone criminally prosecuted because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973); *see also Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution"); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (explaining that there is no constitutional

right to have someone criminally prosecuted). The fact that Golden believes the alleged actions by defendants to be criminal is not sufficient to establish a constitutional wrong for which he is entitled to personal redress under § 1983. Therefore, his claim for criminal prosecution of the individual defendants should be dismissed as frivolous or for failure to state a claim upon which relief may be granted.

**I. Habeas Relief**

In addition to monetary damages, Golden seeks to have the state criminal charges against him dismissed, his criminal record expunged, and release from incarceration.

A prisoner like Golden cannot challenge the fact or duration of confinement in a §1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998). When a criminal detainee's complaint contains both habeas and § 1983 claims "the district court is required to separately decide the § 1983 claims." *Kimble v. Par. of Jefferson*, No. 21-409, 2021 WL 6618459, at *9 (E.D. La. Nov. 3, 2021) (citing *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463–64 (5th Cir. 1998)), *adopted*, 2022 WL 185197, at *1 (E.D. La. Jan. 20, 2022), *aff'd*, No. 22-30078, 2023 WL 1793876 (5th Cir. Feb. 7, 2023). "The plaintiff then must pursue claims that would impact the speed or outcome of his trial or release initially through a separate habeas corpus proceeding." *Id.* (citing *Patton*, 136 F.3d 458, 463–64). Golden's requests for habeas relief are not cognizable in this § 1983 action and should be dismissed for failure to state a claim upon which relief can be granted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that Bobby Rand Golden's § 1983 claims against Sergeant Ford, "Jefferson Parish Correctional Center Medical Personnel," and "Jefferson Parish Correctional Center Security Administration, as well as his § 1983 claims of unlawful arrest, excessive force during search/arrest, and unlawful seizure of vehicle against Detective Charles Carollo, Detective Carl Marshall, Detective Patrick Evans, Sergeant Josh Bermudez, Derek Green, Keith Branchcomb, Blake Holliefield, Sergeant Julio Alvarado, be **DISMISSED WITH PREJUDICE** as they are frivolous and/or fail to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that Golden's § 1983 claims of food tampering, foul language, and deliberate indifference to serious medical needs, and his request that defendants be criminally prosecuted be **DISMISSED WITH PREJUDICE** as they are frivolous and/or fail to state a claim on which relief may be granted.

It is **FURTHER RECOMMENDED** that Golden's request for habeas relief be **DISMISSED WITHOUT PREJUDICE** to as legally frivolous and for seeking relief that cannot be granted in a § 1983 civil rights proceeding.

It is **FURTHER RECOMMENDED** that Golden's claim for false imprisonment against Detective Charles Carollo, Detective Carl Marshall, Detective Patrick Evans, Sergeant Josh Bermudez, Derek Green, Keith Branchcomb, Blake Holliefield, Sergeant Julio Alvarado be **STAYED**.

It is **FURTHER RECOMMENDED** that the Clerk of Court mark this action **CLOSED** for statistical purposes. Furthermore, the Court should order that, within a reasonable time after the finality of Golden's conviction or upon disposition of the charges in his favor, Golden may move to reopen the matter for further proceedings consistent with *Heck*. Golden should be instructed that failure timely to file the motion to reopen could waive his opportunity to proceed with this civil action.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 20th day of August, 2026.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**